**Jerome H. JAFFE**

v.

**Helen JULIEN and Seymour L. Mantel, Executors of the Estate of Alfred S. Julien, and Stuart A. Schlesinger, and Edward J. Sanocki, Jr., and Denise Mortner Krans, and Julien & Schlesinger, P.C.**

Civ. A. No. 90–4895.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1991.

---

Mark S. Pearlstein, Philadelphia, Pa., for plaintiff.

Howard J. Sedran, Philadelphia, Pa., for defendants.

## MEMORANDUM

WALDMAN, District Judge.

Presently before the court is defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). The defendants are a New York City law firm with offices in Manhattan, several

members of the firm and the executors of the estate of one of the firm's former principals. Plaintiff is a Pennsylvania lawyer who referred a case to the New York law firm and now seeks to recover a referral fee. He has requested that, should the court find jurisdiction lacking, the case be transferred to the Southern District of New York rather than dismissed, citing 28 U.S.C. § 1406(a) and § 1631. The record includes affidavits of Mr. Jaffe and Mr. Schlesinger and several exhibits submitted by plaintiff.

## I. BACKGROUND

In June 1984, a client of Mr. Jaffe approached him regarding the possible representation of her sister and brother-in-law, James and Maureen Gilboy, in a civil case to be prosecuted in New York. Mr. Jaffe contacted Mr. Julien, an attorney at Julien & Schlesinger, about the representation and then travelled to New York to meet with Mr. Julien and the Gilboys. The Gilboys live in New York City. Mr. Julien accepted the case for the firm and agreed to pay a referral fee to Mr. Jaffe.

On July 2, 1984, Mr. Julien sent Mr. Jaffe a letter in which he confirmed that a referral fee would be paid and requested Mr. Jaffe's formal approval. The letter was written under the firm letterhead and provides:

> Re: Gilboy v. South Shore Thoracic & Cardiovascular Surgical Group, et al
> Our file no. 23,097

> Dear Mr. Jaffe:

> This will confirm that you will receive twenty-five (25%) percent of our net fee in the above matter. Kindly sign a copy of this letter indicating your consent and return in the envelope provided.

> Per your request, enclosed please find a copy of the summons and complaint in this matter.

> Very truly yours,
> /s/ Alfred S. Julien

SO AGREED:

_____

Jerome H. Jaffe, Esq.

Mr. Jaffe signed the letter and returned it to Mr. Julien. Thereafter, some correspondence was exchanged between Mr. Jaffe and Mr. Julien and between Mr. Jaffe and the Gilboys.

In 1988, the Gilboys became dissatisfied with their representation by the New York firm, specifically by Mr. Schlesinger. Mr. Jaffe went to New York in an attempt to quell the Gilboys' dissatisfaction. The Gilboys later disengaged Julien & Schlesinger and engaged Mr. Harvey Waxman, a Nassau County, New York attorney to represent them. Mr. Waxman obtained a settlement for the Gilboys in April 1989 of $2,375,000.00.

Following a hearing, a Queens County judge determined that of the $791,666.66 in legal fees generated by the settlement, Julien & Schlesinger should receive $527,777.76 and Mr. Waxman should receive $263,888.88. It is 25% of the $527,777.76 received by Julien & Schlesinger, or $131,944.44, that plaintiff seeks in this action.

Defendants contend that they are not subject to suit in Pennsylvania. Julien & Schlesinger conducts no business in Pennsylvania and has no lawyer in its office who is licensed to practice in Pennsylvania. The underlying case involving the Gilboys had nothing to do with Pennsylvania, and was prosecuted in New York. Defendant attorneys never went to Pennsylvania in their representation of the Gilboys for any reason.

## II. DISCUSSION

In deciding a motion to dismiss for lack of personal jurisdiction the allegations of the complaint are taken as true, however, the burden of proof remains with the plaintiff to demonstrate a jurisdictional predicate by competent proof. *Bucks County Playhouse v. Bradshaw*, 577 F.Supp. 1203, 1206 (E.D.Pa.1983).

Defendants' motion must be assessed in light of Pennsylvania's long-arm statute, 42 Pa.Cons.Stat.Ann. § 5301 *et seq.* *See Strick Corp. v. A.J.F. Warehouse Distrib., Inc.*, 532 F.Supp. 951, 953 (E.D.Pa. 1982); *Spelling–Goldberg Prods. v. Bodek & Rhodes*, 452 F.Supp. 452, 453 (E.D.Pa. 1978). This statute permits a court to as-

**52**

sert personal jurisdiction over a defendant "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322. The parameters of jurisdiction set by Pennsylvania's long-arm statute are therefore co-extensive with those of the Due Process Clause of the Fourteenth Amendment.

■ The Pennsylvania statute contemplates that a court may exercise *in personam* jurisdiction on two bases—general jurisdiction or specific jurisdiction. A finding of "general" jurisdiction requires that defendant be "present" in the state either because he is a resident, has consented to be sued here, or, in the case of a corporation or business entity, maintains "a continuous and systematic part of its general business" in Pennsylvania. 42 Pa.Cons. Stat.Ann. § 5301(a)(2)(iii). Plaintiff must demonstrate that the defendant maintained "continuous and substantial" forum affiliation. *Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir.1981).

Personal jurisdiction over defendants in this case clearly cannot be based upon general jurisdiction under § 5301. Plaintiff does not contend that the defendants carry on a continuous and systematic part of their business in Pennsylvania and nothing was proffered from which any such finding could be made.

By contrast, the "specific" jurisdictional provision provides that jurisdiction over non-resident corporate defendants may be "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States," 42 Pa.Cons. Stat.Ann. § 5322(b), but that such an exercise of jurisdiction must be confined to causes of action which arise from these contacts with the state. *Id.* at § 5322(c).

■ In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that due process is satisfied when a nonresident defendant has sufficient contacts with the forum state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* 326 U.S. at 316, 66 S.Ct. at 158. A plaintiff must show that a defendant's activities reasonably should have made him aware that he could be haled into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ The defendant must have purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefit and protection of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The cause of action, in turn, must arise from the defendant's activities within the forum state. *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Gehling v. Saint George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3d Cir.1985). The tendering of a payment by a contracting party to the other contracting party in the forum is not sufficient. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir.1984). The placing of telephone calls or the sending of letters into the forum by a party to the formation of a contract is not sufficient. *See Bucks County Playhouse, supra* at 1209; *Baron & Company, Inc. v. Bank of New Jersey*, 497 F.Supp. 534, 538–39 (E.D.Pa.1980).

■ Plaintiff contends that his cause of action arises from defendants' activities in Pennsylvania, that is the breach of a contract executed in Pennsylvania. In analyzing such a claim, the court will consider the nature of the pre-contract negotiations; the location of those negotiations; the terms of the contract, including the manner and method of performance; and, the subject matter involved. *See Strick, supra* at 958.

As to the nature and location of the negotiations, it appears that plaintiff prompted the agreement by contacting Mr. Julien in New York in June of 1984, and that whatever negotiations ensued took

place in New York at Mr. Julien's office. This weighs heavily against a finding that the defendants purposefully availed themselves of the privileges of conducting business in Pennsylvania. *Cf. Gagner v. Parsons & Whittemore, Inc.*, 450 F.Supp. 1093 (E.D.Pa.1978) (negotiations took place in New York; therefore, no jurisdiction in Pennsylvania).

After agreeing to represent the Gilboys and pay a referral fee, Mr. Julien sent the letter of July 2, 1984 to plaintiff to "confirm" that a referral fee of 25% would be paid. The heading of the letter indicates that the firm had opened a case file and commenced its representation of the Gilboys. There is no reference to what this payment was in consideration of. The letter appears to confirm a prior understanding between the parties and to be designed to secure a formal acknowledgement that plaintiff would accept a 25% referral fee in circumstances where larger fees are not uncommon. Even if plaintiff's return of the letter constituted the final formal step in executing an agreement, this alone would not create *in personam* jurisdiction. Contract formalities are not determinative for purposes of jurisdiction. *Lakeside Bridge and Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 604 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

■ The terms and subject matter of an agreement are particularly helpful in determining whether a defendant could reasonably expect to be sued in the forum. The principal consideration provided by plaintiff was the "referral" which was consummated in New York. Moreover, the unsolicited referral of business to a non-Pennsylvania lawyer from a Pennsylvania lawyer does not provide sufficient contacts to make the former amenable to suit in Pennsylvania. *See Reliance Steel Products Company v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir.1982). The essence of the agreement was the performance of legal services in New York by a New York law firm related to litigation pending in New York on behalf of two New York clients. Moreover, the alleged breach on which this action is premised occurred in New York.

■ The Court concludes that plaintiff has not established sufficient contacts between the New York defendants and Pennsylvania to sustain a finding of personal jurisdiction over these defendants. Rather than grant defendants' motion to dismiss, however, the court in the interest of justice will grant plaintiff's alternative request to transfer this case to the Southern District of New York.

In support of his request for transfer, plaintiff relies on 28 U.S.C. § 1406(a) and § 1631. This cause of action arose from an alleged breach of contract and misrepresentations in the Southern District of New York and thus "could have been brought" there. 28 U.S.C. § 1391(a). While the matter is not free from doubt, the court believes that the language of § 1406(a) may fairly be read broadly enough to permit transfer of a case for want of personal jurisdiction. *See Porter v. Groat*, 840 F.2d 255, 257 (4th Cir.1988); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978); *Taylor v. Love*, 415 F.2d 1118, 1120 (6th Cir.1969), *cert. denied*, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Mayo Clinic v. Kaiser*, 383 F.2d 653, 656 (8th Cir.1967); *Dubin v. U.S.*, 380 F.2d 813, 815 (5th Cir.1967); *Shaw v. Boyd*, 658 F.Supp. 89, 92 (E.D.Pa.1987). While § 1631 was intended to address cases where subject matter jurisdiction is lacking, its plain language, as noted and applied by at least one court in this circuit, also permits the transfer of a case for lack of personal jurisdiction. *See Starline Optical Corp. v. Caldwell*, 598 F.Supp. 1023, 1028 (D.N.J.1984). The court notes that applying the criteria of *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), transfer of this case could also be justified under § 1404(a). (While some key witnesses and records appear to be in Queens and Nassau Counties, in the Eastern District of New York, they are far more proximate to Foley Square than to Philadelphia.)

An appropriate order will be entered.